# United States Tax Court

T.C. Memo. 2025-55

HANI G. ATAYA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

INAAM ATAYA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket Nos. 24028-22, 24029-22.                    Filed June 4, 2025.

————————

*Stephan M. Brown*, for petitioners.

*Sharyn M. Ortega, Nchekube U. Onyima, Kara L. Davidson Duyck*, and *Catherine J. Caballero*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WAY, *Judge*: Respondent issued a separate Notice of Deficiency to each petitioner in these consolidated cases determining deficiencies in petitioners' 2015 and 2016 federal income tax and imposing section 6662[1] accuracy-related penalties. The Notices of Deficiency determined

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] that petitioners received qualified dividends and other income that went unreported on their Forms 1040, U.S. Individual Income Tax Return. With respect to these income tax returns, the Notices of Deficiency also disallowed gross receipts and deductions for other expenses from Schedule C, Profit or Loss From Business.

Following mutual concessions and a Stipulation of Settled Issues for each case, the only issue remaining for decision is whether for 2015 and 2016 petitioners are each liable for the section 6662(a) and (b)(1) accuracy-related penalties for underpayments of tax attributable to negligence or disregard of rules or regulations. The Court finds that they are so liable.

FINDINGS OF FACT

The following facts are drawn from the pleadings, the Stipulations of Facts (together with attached Exhibits), the Stipulations of Settled Issues, and evidence presented at trial. Petitioners resided in California when they timely filed their Petitions with the Court.[2]

I. *Petitioners*

A. *Hani Ataya*

Hani Ataya has been in the car-selling business for nearly 20 years. A high school graduate who attended some college but did not earn a degree, Mr. Ataya first started selling automobiles when an uncle helped him secure a job at a dealership in 2008.

That same year, he incorporated and began running Cost U Less Cars, Inc. (Cost U Less), with a partner, Ali Maadarani. Mr. Ataya contributed $200,000 for Cost U Less's startup costs. They did not consult with a financial planner or an attorney before incorporating the business. Mr. Maadarani left Cost U Less in 2012.

B. *Inaam Ataya*

Inaam Ataya is Mr. Ataya's mother. She holds a bachelor's degree in information systems. She previously worked for California's Employment Development Department, which oversees collection of

---

[2] Thus, absent stipulation to the contrary, this case is appealable to the U.S. Court of Appeals for the Ninth Circuit. *See* § 7482(b)(1)(A), (2).

[*3] payroll taxes in the state. Her experience also includes working as a real estate agent for Coldwell Banker.

She joined Cost U Less in 2012 shortly after Mr. Maadarani left the business. Like her son, Ms. Ataya did not consult with an attorney or a financial planner before joining the business. At some point Ms. Ataya pulled away from the business to take care of another one of her sons, who has a disability.

II.     *Cost U Less Cars*

A.      *Operations and Banking Habits*

Cost U Less's business model involved purchasing used cars in bulk from auction and reselling them. Using his experience from the dealership, Mr. Ataya served as the corporation's primary buyer. He used cashier's checks drawn on one of Cost U Less's corporate checking accounts to make the auction purchases, although sometimes he supplemented those with normal business checks if his auction purchases exceeded the value of the cashier's checks that he purchased or withdrew. In instances where the costs of used-car auction purchases were less than the value of the cashier's checks procured for such purchases, Cost U Less did not have a redepositing or other accounting routine for handling the unused balance of such cashier's checks. Mr. Ataya simply returned any unused cashier's checks issued for these auctions to a drawer in Cost U Less's office for later use.

Ms. Ataya took over the corporation's operations when she joined in 2012. She had access to and occasionally made withdrawals from the corporation's bank accounts.

In 2015 Ms. Ataya directed Mr. Ataya to take money out of the corporation to purchase a multigenerational family home for the Atayas in Granite Bay, California (Granite Bay house). That year, Mr. Ataya withdrew $1.5 million in the form of cashier's checks from Cost U Less's Wells Fargo checking account, held in the name of "Hani Ataya, DBA Cost U Less Cars," for payments for the Granite Bay house.

In 2016 Mr. Ataya purchased cashier's checks from the Wells Fargo account and designated them to be "Held for Future Deposit." He deposited them in another Cost U Less checking account held at Chase Bank under the name "Cost U Less Cars., Inc." Mr. Ataya used these funds to purchase inventory for the corporation, as well as to pay for flooring and to finance related improvements for the Granite Bay house.

**[\*4]**   B.   *Corporate Accounting and Windup*

The corporation had a bookkeeper during the years at issue, Robin Greenslade, who is now deceased. Ms. Greenslade also managed, along with Ms. Ataya, the business operations of Cost U Less. Petitioners were unable to find Cost U Less's business and accounting records that were held by Ms. Greenslade. Petitioners trusted Ms. Greenslade to handle the accounting and did not regularly review her work. Ms. Greenslade was not a shareholder of Cost U Less during the years at issue.

Cost U Less retained Steven Packey of Packey Law Corp. to prepare its corporate filings. He prepared and signed Cost U Less's corporate returns for the years at issue. The corporation, Mr. Ataya, and Ms. Ataya also used the bookkeeping services of Joan Falanga during the years at issue. She recorded Mr. Ataya's capital contributions to Cost U Less, but these records and, indeed, all of her records for the corporation are lost. Cost U Less issued Mr. Ataya Form 1099 information returns for both 2015 and 2016 to reflect certain payments made to him.

Following a period of losing money, Mr. Ataya and Ms. Ataya decided to shut down the business. Cost U Less ceased operations in September 2020. Later, it was placed in suspended status[3] by the California Franchise Tax Board and the California secretary of state for failure to meet certain state tax requirements.

Respondent conducted a corporate audit of Cost U Less and determined deficiencies and accuracy-related penalties for tax years 2014–17.[4] Following the receipt of its Notice of Deficiency, Cost U Less petitioned the Court in 2022 seeking redetermination. This Petition was dismissed for lack of jurisdiction on August 31, 2023, because the corporation had ceased operations by this time and, under Rule 60(c), it no longer had the capacity to engage in or maintain its litigation.

III.   *Tax Reporting, Audit, and Trial*

For tax years 2015 and 2016 Mr. Ataya reported Schedule C business income and claimed Schedule C expenses on his individual

---

[3] California law dictates that suspended corporations forfeit their rights and privileges in the state. Cal. Rev. & Tax. Code § 23301 (West 2025).

[4] These are not at issue here and have been fully assessed by respondent.

[*5] income tax returns. Mr. Ataya did not report dividends received from Cost U Less in either year.

For tax years 2015 and 2016 Ms. Ataya reported Schedule C business income and claimed Schedule C expense deductions on her individual income tax returns. She also claimed student loan interest deductions for both years. She did not report dividends received from Cost U Less in either year.

Mr. Packey prepared both petitioners' 2015 and 2016 individual income tax returns using documents provided by petitioners and Ms. Greenslade. Neither petitioner reviewed these returns nor Mr. Packey's qualifications before filing. Petitioners trusted Mr. Packey to prepare and file their returns correctly.

Certain amounts petitioners received from Cost U Less went unreported on their 2015 and 2016 income tax returns. In addition, certain expenses and deductions claimed on their income tax returns for those years were later determined to be unjustified. These included certain Schedule C expenses and, in the case of Ms. Ataya, student loan interest deductions.

By 2021 the Internal Revenue Service audit of Cost U Less's returns had expanded to include petitioners' individual income tax returns. The original auditor of Cost U Less, Revenue Agent (RA) Brian Frizzi, summoned the bank records held in the name of the corporation as well as those held by petitioners. Using the bank-deposits analysis method[5] for reconstructing income, he determined that petitioners had received qualified dividends from Cost U Less and were not entitled to claim deductions for Schedule C expenses on their personal income tax returns because they were each 50% shareholders of a subchapter C corporation that reported its income and expenses on its Forms 1120, U.S. Corporation Income Tax Return.

On March 25, 2022, RA Frizzi proposed accuracy-related penalties under section 6662(a) on a Civil Penalty Approval Form for each petitioner. The reasons listed for seeking penalties were negligence and failure to exercise ordinary care and prudence in the preparation of

---

[5] In a bank-deposits analysis the Commissioner first equates deposits with income, then subtracts any identifiable nontaxable items, deductible expenses, or income that was reported on the taxpayer's return. *See Clayton v. Commissioner*, 102 T.C. 632, 645–46 (1994).

[*6] tax returns. These penalties were approved by RA Frizzi's direct supervisor, Group Manager John Yu, the same day.

On August 16, 2022, respondent issued a separate Notice of Deficiency to each petitioner. Mr. and Ms. Ataya timely petitioned this Court, and their cases were subsequently consolidated following a Motion by respondent. A remote trial was held on October 22, 2024, to address the sole remaining issue of accuracy-related penalties under section 6662(a) and (b)(1).

OPINION

I.    *Burdens of Proof and Production*

Generally, the Commissioner's determinations set forth in a Notice of Deficiency are presumed correct. *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In unreported income cases the Commissioner must establish a minimal evidentiary showing connecting the taxpayer with the alleged income-producing activity, after which the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. *Walquist v. Commissioner*, 152 T.C. 61, 67–68 (2019). Given the parties' Stipulations of Fact, it is not in dispute that respondent has laid this minimal evidentiary foundation linking the bank deposits, cash withdrawals, and cashier's checks from Cost U Less to petitioners.

An exception applies for the burden of production regarding determinations of penalties in court proceedings such as this. Under section 7491(c), the Commissioner bears the burden of production with respect to an individual's liability for penalties or additions to tax. In order to meet this burden, respondent must present sufficient evidence indicating that it was appropriate to impose the penalties at issue. *See Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). This burden includes producing evidence that the initial determination of the accuracy-related penalties was approved in writing by the immediate supervisor of the individual making the determination. *See* § 6751(b)(1); *Graev v. Commissioner*, 149 T.C. 485 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016).

The Ninth Circuit has refined the signature approval requirement. *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020). Ninth Circuit precedent holds that the Commissioner meets this requirement when the penalty approval occurs before the assessment of

[*7] the penalty. *Id.* at 1071, 1074. Additionally, if assessment occurs after the supervisor would lose discretion to approve assessment, then the approval requirement may be met before the supervisor's loss of discretion. *Id.* In either case the Ninth Circuit has held that penalty approval must occur before penalty assessment and while the supervisor has discretional authority to approve the assessment. *Id.*

For deficiency cases such as these, this discretion is lost when a Notice of Deficiency is issued. *See Kraske v. Commissioner*, 161 T.C. 104, 110–12 (2023) (holding that *Laidlaw's* extends to accuracy-related penalties under section 6662(a) subject to deficiency procedures).

Group Manager Yu, the relevant supervisor, approved the accuracy-related penalties for each case on March 25, 2022. The Notices of Deficiency were issued to petitioners on August 16, 2022. Thus, respondent met his burden of production with respect to the managerial approval of the accuracy-related penalties in these cases.

II.    *The Imposition of an Accuracy-Related Penalty*

Section 6662(a) and (b)(1) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if the underpayment is attributable to negligence or disregard of rules or regulations.

As a threshold matter, petitioners have conceded that they received qualified dividends that went unreported on their 2015 and 2016 returns and that they were not entitled to certain business expense and other deductions for those years. The sums of these qualified dividends and disallowed deductions as set forth in petitioners' respective Notices of Deficiency lead to underpayments which RA Frizzi attributed to negligence under section 6662(b)(1).

Such penalties will not be imposed, though, if any portion of the underpayment is attributable to a taxpayer's reasonable cause and good faith actions to comply with his or her tax obligations. § 6664(c)(1). The particular facts and circumstances surrounding a taxpayer's actions or lack thereof influence a determination of whether the taxpayer had reasonable cause and acted in good faith. Treas. Reg. § 1.6664-4(b)(1). Factors to consider in this analysis include a taxpayer's experience, education, and sophistication, as well as the extent to which the taxpayer made efforts to assess the proper tax liability. *Id.*; *see also Higbee*, 116 T.C. at 448.

**[\*8]** III.  *Analysis of Reasonable Cause and Good Faith*

Petitioners argue that the imposition of penalties in these cases would be unfair because of their failed attempt to contest Cost U Less's corporate deficiency proceeding in this Court following Cost U Less's being placed in suspended status by the State of California. Related to this corporate suspension is petitioners' claim that they are unable to access the accounting records for Cost U Less so as to adequately dispute the deficiencies giving rise to the accuracy-related penalties because they were purportedly seized by California.

The Court does not find these arguments persuasive. First, the deficiencies in these cases have been settled under Rule 91(e). Petitioners cannot now, after trial, circumvent the conclusive admissions in their jointly filed Stipulation of Settled Issues. *See Witasick v. Commissioner*, T.C. Memo. 2024-112, at \*10. Additionally, petitioners have not had entered into evidence or otherwise adequately shown that their corporate records were seized by California. While the Court accepts the stipulation that the bulk of Cost U Less's records have been lost, the Court cannot find that California has interfered with their ability to litigate these cases.

Relatedly, petitioners' recordkeeping for Cost U Less exhibited a pattern of negligence warranting the imposition of accuracy-related penalties. Taxpayers are required to keep sufficient records to substantiate the amounts of gross income reported and deductions claimed on a return. *See* § 6001; Treas. Reg. § 1.6001-1(a). Mr. Ataya's routine of designating unused cashier's checks to be held for future deposit and returning unused checks to a drawer in the company's office might have been reasonable if additional controls had been used to substantiate the returns, but it falls short of this requirement on its own.

This is especially the case given petitioners' experience, sophistication, and education. Mr. Ataya worked in the used car business before starting Cost U Less and was an experienced buyer and businessman during the years at issue. Ms. Ataya holds a bachelor's degree, worked as a real estate agent, and worked for a state government agency overseeing payroll taxes. These experiences would have exposed petitioners to methods of recordkeeping consistent with ordinary business care and prudence.

[*9] Petitioners also argue that they reasonably relied on the bookkeeping services of Ms. Greenslade and Ms. Falanga, as well as the tax preparation of Mr. Packey. Reliance on the advice of a tax professional can serve as a good-faith defense to accuracy-related penalties under section 6664(c)(1), but only if the following factors are present:

- The adviser was a competent professional who had sufficient expertise to justify reliance;

- The taxpayer provided necessary and accurate information to the adviser; and

- The taxpayer actually relied in good faith on the adviser's judgment.

*Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002).

Whether a taxpayer relied on professional advice and whether this reliance was reasonable depend on the particular facts and circumstances. *See* Treas. Reg. § 1.6664-4(c)(1). Such reliance still requires that the taxpayer have acted in good faith. *Higbee*, 116 T.C. at 448–49.

Although petitioners testified that they relied on Ms. Greenslade and Ms. Falanga for bookkeeping services and on Mr. Packey for tax preparation services, the record lacks evidence of their professional qualifications or, in the case of Mr. Packey, evidence of his competence as a tax professional.

Petitioners argue not only that they trusted both Mr. Packey and Ms. Greenslade, but also that they provided these professionals with the necessary documents and information. Critically, though, they have failed to sufficiently prove this assertion with evidence in the record. Mere statements alone do not show a taxpayer actually relied on advice from a tax professional during the return preparation process. *See Clark v. Commissioner*, T.C. Memo. 2025-13, at *8. The Court thus finds that they did not rely on professional tax advice sufficiently to meet the good faith exception of section 6664(c)(1).

**[\*10]** IV. *Conclusion*

The Court finds that petitioners failed to present persuasive evidence showing a cognizable effort to assess their proper tax liabilities or reasonable cause for their underpayments. Consequently, the Court will sustain their accuracy-related penalties for underpayments of tax due to negligence or disregard of rules or regulations.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*